OA 91 Criminal Complaint

# United States District Court

NORTHERN  DISTRICT OF  CALIFORNIA



UNITED STATES OF AMERICA
V.
JOSE ALVARADO

**CRIMINAL COMPLAINT**

Case Number:



(Name and Address of Defendant)

3    08    70401    MEJ

I, the undersigned complainant being duly sworn state that the following is true and correct to the best of my knowledge and belief. On or about   June 19, 2008   in   San Francisco   County, in the   Northern   District of   California   defendant(s) did,

(Track Statutory Language of Offense)

See Attachment A

in violation of Title _____ United States Code, Section(s) _____.

18 U.S.C. Secs. 1959(a)(3) and 2 (Assault with a Dangerous Weapon in Aid of Racketeering)
18 U.S.C. Secs. 1959(a)(5) and 2 (Attempted Murder in Aid of Racketeering)

I further state that I am a(n)   Special Agent of ICE   and that this complaint is based on the following facts:

See Attachment B

Continued on the attached sheet and made a part hereof:   ☒ Yes   ☐ No

Approved As To Form:   W.S. Wilson Leung
AUSA

Christopher J. Merendino
Name/Signature of Complainant

Sworn to before me and subscribed in my presence,

July 2, 2008                            at   San Francisco,  California
Date                                           City and State

HON. MARIA-ELENA JAMES        U.S. MAGISTRATE JUDGE
Name & Title of Judicial Officer                Signature of Judicial Officer

## ATTACHMENT A

### Count One (Assault with a Dangerous Weapon in Aid of Racketeering)

1.      At all times relevant to this Complaint, La Mara Salvatrucha, also known as "MS-13," including its leadership, its membership, and its associates, constituted an "enterprise," as that term is defined in Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact, although not a legal entity, which was engaged in, and the activities of which affected, interstate and foreign commerce. The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

2.      At all times relevant to this Complaint, MS-13, through its members and associates, engaged in racketeering activity as that term is defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), including acts involving murder, attempted murder, narcotics trafficking, and extortion.

3.      On or about June 19, 2008, in the Northern District of California, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from MS-13, and for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, the defendant, **JOSE ALVARADO**, a/k/a "Joker," unlawfully, knowingly, and intentionally did assault a male victim with a dangerous weapon, in violation of California Penal Code Sections 245(a)(1) and 31.

All in violation of Title 18, United States Code, Sections 1959(a)(3) and 2.

### Count Two (Attempted Murder in Aid of Racketeering)

1.      At all times relevant to this Complaint, La Mara Salvatrucha, also known as "MS-13," including its leadership, its membership, and its associates, constituted an "enterprise," as that term is defined in Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact, although not a legal entity, which was engaged in, and the activities of which affected, interstate and foreign commerce. The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

2.      At all times relevant to this Complaint, MS-13, through its members and associates, engaged in racketeering activity as that term is defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), including acts involving murder, attempted murder, narcotics trafficking, and extortion.

3.      On or about June 19, 2008, in the Northern District of California, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from MS-13, and for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, the defendant, **JOSE**

**ALVARADO,** a/k/a "Joker," unlawfully, knowingly, and intentionally did attempt to murder a male victim, in violation of California Penal Code Sections 187, 188, 189, and 664.

All in violation of Title 18, United States Code, Sections 1959(a)(5) and 2.

## ATTACHMENT B

## AFFIDAVIT OF CHRISTOPHER J. MERENDINO

I, CHRISTOPHER J. MERENDINO, Special Agent with Immigration and Customs Enforcement, being duly sworn, do declare and state:

### I. INTRODUCTION

1. I am a Special Agent with Immigration and Customs Enforcement ("ICE") and have been so employed for approximately 6 years. I am presently assigned to ICE's San Francisco office, where I investigate violations of federal law, with a focus on violent crimes and crimes committed by street gangs. During my career with ICE, I have received training on a variety of law enforcement subjects, including violent crimes, gang organization, narcotics trafficking, and criminal procedure. I have also conducted and participated in numerous investigations of violent street crimes. The information set forth below is based on my own investigation or on conversations I have had with other law enforcement officers and from reviewing law enforcement documents.

2. This Affidavit is made in support of a Criminal Complaint charging **JOSE ALVARADO**, a/k/a "Joker," with: (a) Assault with a Dangerous Weapon in Aid of Racketeering, in violation of Title 18, United States Code, Sections 1959(a)(3) and 2; and (b) Attempted Murder in Aid of Racketeering, in violation of Title 18, United States Code, Sections 1959(a)(5) and 2.

3. Because this Affidavit is submitted for the limited purpose of establishing probable cause for an arrest warrant, I have not included each and every fact known to me that supports probable cause for arrest. Rather, I have set forth only the facts that I believe are necessary to support the lawful arrest of the individual listed in this Affidavit.

4. Where statements made by other individuals (including other Special Agents and law enforcement officers) are referenced in this Affidavit, such statements are described in sum and substance and in relevant part. Similarly, where information contained in reports and other documents or records are referenced in this Affidavit, such information is also described in sum and substance and in relevant part.

### II. BACKGROUND: LA MARA SALVATRUCHA

5. Based on my experience, training, and investigation, I know that at all times relevant to this Complaint, La Mara Salvatrucha, also known as "MS-13," is a street gang that was formed in Los Angeles, California, during the 1980s. MS-13 members principally are of El

Salvadoran background, although many members have roots in other countries, such as Honduras and Guatemala. MS-13 has local gangs, or "cliques," located throughout the world. I know that there is an MS-13 clique in San Francisco, California, which is centered on 20th Street in the Mission District, the members of which call themselves "20th Street" or the "20th Street Clique." From my years working with ICE and investigating MS-13, I know that many members of the 20th Street Clique are personally known to members of the San Francisco Police Department. I have also conducted surveillance and seen members of the 20th Street Clique bearing MS-13 identifiers, such as tattoos --- e.g., of the name "La Mara Salvatrucha" or a depiction of a hand with the middle and ring fingers down and the pinky and index fingers up making a "devil's horn" gesture --- and/or wearing blue clothing, handkerchiefs, or hats, which display the color of the gang. I have also seen items decorated with MS-13 and 20th Street Clique designs, such as stun guns and clubs bearing the gang's name, as well as read translations of letters members sent to each other discussing gang activities.

6. Based on my experience, training, and investigation, I know that at all times relevant to this Complaint, MS-13 constitutes an "enterprise" as defined under Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact, although not a legal entity, which was engaged in, and the activities of which affected, interstate and foreign commerce. MS-13 constitutes an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise, including enriching the members of MS-13 and preserving the power of the gang through fear, violence, and intimidation. MS-13 has been named as the enterprise in various racketeering and racketeering-related cases throughout the United States.

7. Based on my experience, training, and investigation, I know that at all times relevant to this Complaint, MS-13 was engaged in "racketeering activity," including acts involving murder, attempted murder, narcotics trafficking, and extortion, as defined under Title 18, United States Code, Sections 1959(b)(1) and 1961(1). Members of MS-13 violently clash with members of rival gangs not only over control of drug territory or extortion victims, but also over gang pride. Indeed, according to MS-13 members with whom I have spoken, a member of MS-13 is expected to attack, or aid in the attack, of a member (or suspected member) of a rival gang whenever the opportunity arises. Failure to assist a fellow MS-13 member in an attack is considered cowardice and will result in loss of standing within the gang or even punishment by the gang. In contrast, greater respect is given to members who engage in more frequent and more audacious acts of violence against rivals (real or perceived), as well as to those who assist their fellows in attacks.

8. Based on my experience, training, and investigation, I know that in San Francisco, the principal rival to the 20th Street Clique is the Norteños gang. Many violent incidents have

occurred based on nothing more than an encounter between a Norteño and a member of the 20th Street Clique. Indeed, innocent bystanders who were mistaken for gang members have been attacked by members of MS-13 and the Norteños.

### III. ALVARADO'S VIOLENT CRIMES IN AID OF RACKETEERING

9. I learned the following from reviewing reports of the San Francisco Police Department (the "SFPD") as well as conferring with a member of the SFPD's Gang Task Force (the "Inspector") who has been investigating MS-13, Norteños, and other gangs for more than a decade:

   a. During the afternoon of on or about June 19, 2008, the Inspector responded to a report of an attack in the vicinity of 21st and Mission Streets in San Francisco and interviewed one of the victims of the attack ("Victim-1"). From Victim-1, the Inspector learned the following:

      i. During the afternoon of on or about June 19, 2008, Victim-1 was driving a car in the Mission District of San Francisco. The Victim-1's brother ("Victim-2") was riding in the front passenger seat and Victim-1's child was riding in the back.
      ii. While Victim-1's car was stopped in the vicinity of 21st and Mission Streets, three men whom Victim-1 did not know rushed toward Victim-1's car.
      iii. In response to the approach of the three men, Victim-1 attempted to escape by making a U-turn. Victim-1, however, drove her car into another vehicle.
      iv. After the crash, the three men came upon the car and attacked Victim-2, apparently punching him and trying to pull him out of the car through the open passenger side window. Victim-1 got out of the car and screamed at the men, who left. Victim-1 then saw Victim-2 exit the car and fall down, bleeding from his stomach. Victim-1 asked for help, and someone drove Victim-1, Victim-2, and Victim-1's child in Victim-1's car to San Francisco General Hospital.

   b. The Inspector interviewed a witness to the attack on Victim-2, who advised the Inspector that, immediately before the attack, s/he heard a man tell several other men, "Let's stab him."

   c. The Inspector confirmed with San Francisco General Hospital that Victim-2 was admitted the afternoon of on or about June 19, 2008 and was treated for serious

stab wounds to his abdomen. Doctors kept Victim-2 in a medically-induced coma for several days and Victim-2's initial prognosis was uncertain, but over the following week, Victim-2's condition improved.

d. Several video cameras were mounted in the vicinity of 21st and Mission Streets where the attack occurred. The Inspector reviewed video from these cameras and saw part of the attack on Victim-2. In particular, the Inspector recognized the three men who rushed Victim-1's car and attacked Victim-2. One of these three was **JOSE ALVARADO**, whom the Inspector also knows by the street name "Joker." The Inspector has known **ALVARADO** since in or about 2001, and the other two for several years, and knows them all to be members of the 20th Street Clique. One of the three (not **ALVARADO**) also had long hair.

e. Based in part on the Inspector's review of the video, the Inspector presented Victim-1 with a six photo photographic array that contained **ALVARADO**'s picture. Victim-1 identified **ALVARADO** as one of the men who rushed her car and attempted to pull Victim-2 out of the vehicle.

f. Later, on or about June 19, 2008, based in part on the Inspector's review of the video and Victim-1's identification of **ALVARADO**, members of the SFPD arrested **ALVARDAO**. After being <u>Mirandized</u>, **ALVARADO** agreed to waive his constitutional rights and made the following statements, among others, to the Inspector, which were recorded (I have reviewed a copy of this recording):

   i. **ALVARADO** denied participating in the attack on Victim-2.
   ii. **ALVARDAO** admitted that he and some of his friends chased Victim-1's vehicle.
   iii. **ALVARADO** explained that he and his friends chased Victim-1's vehicle because the driver and the passenger called one of his friends a "scrap," which, based on my experience, training, and investigation, I know is an insult used by Norteños to refer to a member of MS-13.
   iv. **ALVARADO** explained the one of his friends called one of the occupants of Victim-1's vehicle a "chap," which, based on my experience, training, and investigation, I know is an insult used by MS-13 members to refer to a Norteño.

10. On or about July 1, 2008, I spoke with Victim-1. Among other things, Victim-1 told me that one of the men who rushed her car had long hair, and that prior to the attack, he had pointed out her vehicle to the others who participated in the attack.

11. Based on the foregoing, I hereby assert that probable cause exists to believe that **JOSE ALVARADO**, a/k/a "Joker," is in violation of Title 18, United States Code, Sections 1959(a)(3) and (5), and 2, specifically, Assault with a Dangerous Weapon in Aid of Racketeering, and Attempted Murder in Aid of Racketeering. In accordance with MS-13 rules, **ALVARADO**, a known member of MS-13, helped two other known members of MS-13 in a concerted attack against Victim-2, and as a result, inflicted life-threatening stab wounds upon Victim-2.

CHRISTOPHER J. MERENDINO
Special Agent
Immigration and Customs Enforcement

Sworn to and subscribed before me
this 2nd day of July, 2008

HONORABLE MARIA-ELENA JAMES
UNITED STATES MAGISTRATE JUDGE